**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CHEFS' WAREHOUSE, INC. and DAIRYLAND USA, CORP., <br><br> Plaintiff, <br><br> v. <br><br> BALDOR SPECIALTY FOODS, INC. and GARY DOTTEN, <br><br> Defendants. | Case No.: 1:17-cv-9432 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs The Chefs' Warehouse, Inc. and Dairyland USA, Corp. (collectively, "Chefs' Warehouse" or "Plaintiffs"), by and through their attorneys Reed Smith LLP, hereby allege against Defendants Baldor Specialty Foods, Inc. ("Baldor") and Gary Dotten ("Dotten" and together with Baldor, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.      This action arises out of the highly competitive food distribution industry.  Chefs' Warehouse, a national food distribution company, secured, maintains and grows its business by using confidential and proprietary information it spent over 30 years developing.  Chefs' Warehouse, however, recently learned that Baldor, a regional competitor, hatched a carefully-orchestrated scheme to obtain a competitive advantage:  Baldor misappropriated, and is using, Chefs' Warehouse's confidential and proprietary information and trade secrets it improperly acquired by poaching Dotten, one of Chefs' Warehouse's trusted inside salespersons and an employee who executed a clear and unambiguous non-disclosure, non-compete and non-solicitation agreement.  Chefs' Warehouse brings this action to enforce this agreement and put an end to Baldor's and Dotten's misconduct.

2.      Chefs' Warehouse hired Dotten in May 2015 as an Inside Salesperson.  This position, by its nature, required Dotten to have access to Chefs' Warehouse's proprietary and confidential information and trade secrets, including customer lists, customer history and purchase reports, customized pricing on a customer-by-customer and item-by-item basis, and technologies and business methodologies for delivering products that meet customers' individuals needs and preferences.

3.      As a result, Chefs' Warehouse required Dotten to sign a non-competition and non-solicitation agreement (the "Agreement") which prohibited him from using Chefs' Warehouse's confidential and proprietary information for non-company purposes, and if he left Chefs' Warehouse, from competing with Chefs' Warehouse for six (6) months and from soliciting its customers for two (2) years.

4.      After Chefs' Warehouse spent the greater part of two years teaching Dotten the ins-and-outs of its and its customers' businesses, Dotten abruptly walked off the job without explanation.

5.      In the days that followed, Defendants' surreptitious scheme was manifest.  Upon information and belief, Baldor induced Dotten to defect to Baldor and to disclose Chefs' Warehouse's confidential and proprietary information and trade secrets to his supervisors.  Upon information and belief, with Chefs' Warehouse's confidential and proprietary information and trade secrets in hand, Defendants then solicited Chef Warehouse's long-time customers with the goal of convincing them to bring their business to Defendants and away from Chefs' Warehouse.

6.      Unless Defendants are stopped, Chefs' Warehouse will continue suffering harm in the form of loss of goodwill and business reputation as a result of Defendants' misappropriation of its confidential and proprietary information and trade secrets as well as other damages.

Accordingly, Chefs' Warehouse brings this action in order to enforce its statutory, contractual and New York state common law rights.

## PARTIES

7.      The Chefs' Warehouse, Inc. is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, Connecticut 06877.

8.      Dairyland USA, Corp. is a corporation duly formed and existing under the laws of the State of New York with a principal place of business in Bronx, New York.  Dairyland is a wholly-owed subsidiary of The Chefs' Warehouse, Inc.

9.      Baldor Specialty Foods, Inc. is a corporation duly formed and existing under the laws of the State of Delaware with a principal place of business at 155 Food Center Dr., Bronx, New York, 10474.

10.     Dotten is a former employee of Chefs' Warehouse who is now working for Baldor.  Dotten resides at 3340 Bailey Avenue, Bronx, New York 10463.

## JURISDICTION AND VENUE

11.     This is an action for injunctive relief and to recover damages arising under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.  This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and supplemental jurisdiction over Chefs' Warehouse's state-law causes of action under 28 U.S.C. § 1367.

12.     This Court has jurisdiction over Defendants because they are located in the State of New York and transact business in the State of New York and because this action arises from Defendants' activities in the State of New York.

13.     This Court also has jurisdiction over Dotten because, pursuant to Section 12(f) of the Agreement, Dotten agreed that:

> any action to enforce, construe or interpret, or otherwise effecting this Agreement may only be brought in either the State or Federal Courts serving and located in the State of New York, and the parties hereby irrevocably submit and consent to the jurisdiction of those courts.

14.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d)  because, among other reasons, Defendants are subject to personal jurisdiction in this District, and have committed and continue to commit unlawful acts in this District.

## STATEMENT OF FACTS

### A.  CHEFS' WAREHOUSE IS A LEADER IN THE HIGHLY COMPETITIVE FOOD DISTRIBUTION INDUSTRY

15.     Chefs' Warehouse is a premier distributor of specialty foods in 15 geographic markets across the United States and Canada.  Chefs' Warehouse's customer base largely consists of menu-driven independent restaurants, fine dining establishments, country clubs, hotels, caterers, culinary schools, bakeries, patisseries, chocolatiers, cruise lines, casinos and specialty food stores.

16.     The food distribution business is highly competitive.  Chefs' Warehouse competes for market share with global food distribution giants, such as Sysco Corporation and US Foods.  Chefs' Warehouse also competes with regional food distributors, such as Baldor, a specialty food distributor in the Northeast and Mid-Atlantic regions.  Success in the industry is thus dependent on several factors, including developing and maintaining special relationships with customers, and creating and adapting proprietary technologies and business methods to meet customer needs and preferences.

17.     To create and maintain a competitive advantage, over the last 30 years, Chefs' Warehouse invested, and continues to invest, considerable resources to develop information, methods and techniques to, among other things: (a) identify potential customers; (b) identify the key individuals responsible for purchasing food items; (c) develop business relationships with customers; (d) learn the food supply needs of these customers; (e) develop novel proprietary technologies and business methods and methodologies to deliver food products to customers' particular needs and preferences; (f) curating constantly evolving portfolios of distinctive and hard-to-find specialty food products; and (g) developing pricing models to attract and maintain clients while driving continued growth.

18.     These methods, techniques and information are not obtainable from public sources and constitute confidential and proprietary information and trade secrets.

19.     Because this information is the lifeblood of Chefs' Warehouse business, and to protect against its legitimate business interests, Chefs' Warehouse often requires its salespersons to sign non-compete, non-solicitation and non-disclosure agreements.

**B.  CHEFS' WAREHOUSE HIRES DOTTEN AS AN INSIDE SALESPERSON AND GRANTS HIM ACCESS TO ITS CONFIDENTIAL AND PROPRIETARY INFORMATION AND TRADE SECRETS**

20.      On May 12, 2015, Dotten applied for an Inside Sales job with Chefs' Warehouse. At that time, Dotten did not have any knowledge of its confidential and proprietary information and trade secrets.  Rather, Dotten did not have *any* prior experience with the food distribution industry and had less than one year of experience as a salesperson in a wholly unrelated industry.

21.     Nevertheless, Chefs' Warehouse believed that with extensive training, Dotten could be an effective salesperson.  As a result, Chefs' Warehouse hired Dotten as an Inside Salesperson on May 12, 2015.

22.    As an Inside Salesperson, Dotten was responsible for, among other things, building and maintaining customer relationships, resolving customer service issues, attending sales meetings and product education seminars and various direct sales activities including preparing orders, upselling customers and generally providing coverage when the Inside or Outside sales representatives were absent.

23.    Dotten had a duty to gain intimate familiarity with Chefs' Warehouse customers, maintain and cultivate relationships with existing customers, develop new customer relationships and to develop Chefs' Warehouse's business.    Because Dotten's direct supervisor has an approximately $50 million book of business, Dotten had direct access to 200 of Chefs' Warehouse's core customers.

24.    In carrying out his duties, Dotten had access to confidential and proprietary information about Chefs' Warehouse, its customers, employees, subcontractors, vendors, suppliers, referral sources and its owners' officers, including, but not limited to, customer names and other information, financial information pertaining to customers and/or Chefs' Warehouse and its owners, officers and employees, referral sources, business information, personal information pertaining to its owners, officers and employees, mailing lists, reports, files, memoranda, computer records, manuals, marketing material and strategies (the "Confidential and Proprietary Information").

25.    Dotten also had access to Confidential and Proprietary Information that constituted Chefs' Warehouse's trade secrets not obtainable from public sources, including, but not limited to:

a.  Customer lists;

b.  Customer history and purchase reports, including detailed purchase history, pricing (including margins and gross profit), and purchasing trends;

c.  Points of contact for key individuals responsible for customer orders;

d.  Product service and operations strategies;

e.  Sales pitch information;

f.  Accounts receivable information for customers;

g.  Customized pricing used by Chefs' Warehouse on a customer-by-customer and item-by-item basis;

h.  Supplier databases with information concerning Chefs' Warehouse's specific suppliers;

i.  Technologies and business methodologies for delivering products that meet customers' individual needs and preferences;

j.  Sales and marketing strategies and techniques;

k.   Detailed service models; and

l.  Delivery times and order cut schedules.

(collectively, the "Trade Secrets").

## C.  DOTTEN SIGNS A NON-COMPETITION, NON-SOLICIT AND NON-DISCLOSURE AGREEMENT

26.     In recognition that Dotten had access to Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets, in exchange for valid and ongoing consideration, Dotten and Chefs' Warehouse entered into a Employee Confidentiality, Non-Solicit, Non-Interference and Non-Compete Agreement dated January 6, 2016, (the "Agreement").   A true and correct copy of the Agreement is annexed hereto as **Exhibit 1**.

27.     The Agreement contains three main provisions: (1) non-competition agreement; (2) non-solicit agreement; and (3) non-disclosure agreement.  *See generally* Exhibit 1, §§ 2-3.

28.     First, the Agreement provides that Dotten "shall not become employed by, advise, render services to, consult, or do business with any of the following competitors of the company or similar businesses which, directly or indirectly, compete with the Company, now or in the

future (the "Competitors"): (1) Baldor; (2) Ace Endico; (3) Primzie; (4) Performance Food Group; (5) GAF Seeling; (6) J. King; (7) Julius Silvert; (8) US Foods; and (9) Sysco Corporation." *See* Agreement, Exhibit 1, §3 (d).  As noted, Baldor was the first competitor listed in the Agreement.  The non-compete provision survives six (6) months after termination of Dotten's employment.

29.    Second, the Agreement provides that Dotten may not, directly or indirectly: (a) "solicit or encourage any customer or referral source of the Company to cease doing business with or reduce their business with the Company;" or (b) solicit "any customer or referral source of the Company on behalf of any food products or business that competes with the Company anywhere in the United States."[1] *Id.* §§ 3(a)-(b).  The non-solicitation provision survives two years after Dotten ceases employment with The Chefs' Warehouse.  *Id.*

30.    Third, the Agreement provides that Dotten must "keep all information regarding the Company and its business confidential at all times," "must not disclose the Confidential Information to any third party during or after Employee's period of employment with the Company," and "shall immediately deliver to the Company all property and materials belonging to the Company in the Employee's possession or under the Employee's control, including, but not limited to, all Confidential Information of the Company and any documents or materials that describe or refer to such Confidential Information, upon termination of Employee's period of employment with the Company or whenever otherwise directed by the Company."  Exhibit 1, § 2.

---

[1] The Agreement defines "customer" as "any person, business or entity: (i) which transacted any business with the Company during the twelve (12) month period preceding the cessation of Employee's employment; or (ii) whose business the Company actively pursued during Employee's period of employment with the Company."  Exhibit 1, § 4.

31.     Dotten acknowledged and agreed that the aforementioned covenants "are reasonable as to scope, location, and duration" and that his compliance with the covenants will not cause him "undue hardship or unreasonably interfere" with his "ability to earn a livelihood and practice" his "present skills and trade."[2] *Id.* at § 5.

32.     The Agreement provides that if Dotten breaches the Agreement, Chefs' Warehouse "shall be entitled to equitable relief, including injunction and specific performance in addition to all other remedies available to the Company at law or in equity, including injunctive relief."  Dotten agreed that in the event of any breach of the Agreement, "it would be extremely impracticable to measure the resulting damages and the Company will be irreparably harmed."

33.     Finally, Dotten agreed to disclose the Agreement, and its terms, to any prospective employer during the two year period after his termination of employment with Chefs' Warehouse.  *Id.*

**D.  DOTTEN ABRUPTLY WALKS OFF THE JOB WITHOUT EXPLANATION**

34.     On September 22, 2017 — over 2 years after working for Chefs' Warehouse and having intimate access to its Confidential and Proprietary Information and Trade Secrets — Dotten suddenly informed Chefs' Warehouse that he was resigning from his employment, effective October 8, 2017.  Dotten did not give a reason for his resignation.  A true and correct copy of Dotten's resignation e-mail, dated September 22, 2017, is annexed hereto as **Exhibit 2**.

35.     Dotten's resignation came as a surprise to Chefs' Warehouse, as he had never previously expressed any unhappiness with his position or any intent to resign.  To the contrary, in his resignation email, Dotten stated:

---

[2] Dotten acknowledged that, prior to signing the Agreement, Chefs' Warehouse advised him to consult an attorney and that he in fact availed himself of such counsel as he deemed appropriate.  Exhibit 1, § 12(g).

> Thank you for the support and the opportunities that you have provided me during the last two years. I have truly enjoyed my time here, and am more than grateful for the encouragement you have given me in pursuing my professional and personal growth objectives.

*See* Exhibit 2.

36.     Chefs' Warehouse accepted Dotten's resignation, effective October 8, 2017. Although that date landed on a Sunday, Dotten confirmed that he would work through the weekend "[s]ince there is no coverage that day."  *Id.*  At no time did Dotten ever mention that he was planning on working for a competitor of Chefs' Warehouse in violation of the Agreement, let alone the first competitor identified in Section 3(d) of the Agreement.

37.     Despite promising to work through October 8, 2017, Dotten walked of the job on October 5, 2017.  When Chefs' Warehouse confronted Dotten as to whether he was going to return to the office to fulfill his employment obligations, Dotten simply said "no."

**E.  BALDOR SURREPTITIOUSLY HIRED DOTTEN AND BEGAN EXPLOITING CHEFS' WAREHOUSE'S CONFIDENTIAL AND PROPRIETARY INFORMATION AND TRADE SECRETS**

38.     Shortly after Dotten's resignation, Chefs' Warehouse learned that, notwithstanding Dotten's agreement not to work for Chefs' Warehouse's competitors, Dotten almost immediately began working in and/or substantially assisting Baldor's sales department, Chefs' Warehouse's direct competitor in the New York food distribution market.

39.     Upon information and belief, Baldor hired Dotten despite being appraised of the Agreement — as required by Section 10 of the Agreement — including the non-compete, non-solicitation and non-disclosure provisions contained therein.  Moreover, despite demand by Chefs' Warehouse, Baldor has refused to terminate Dotten's employment with Baldor.

40.     Additionally, upon information and belief, after luring Dotten away from Chefs' Warehouse, Defendants have engaged in an organized and systematic effort to solicit Chefs'

Warehouse's customers and to actively exploit customer relationships Dotten developed while working at Chefs' Warehouse.

41.     Upon information and belief, since Dotten left Chefs' Warehouse, Defendants, directly or indirectly, have solicited Chefs' Warehouse's customers, including by initiating, attending and participating in meetings with Chefs' Warehouse's customers during which Defendants promoted and pitched Baldor's products and services, and asked Chefs' Warehouse's clients to direct their business to Baldor.

42.     Upon information and belief, in order to compete in the marketplace, Dotten disclosed and Defendants have used the Confidential and Proprietary Information and Trade Secrets all in violation of the Agreement.

43.     Upon information and belief, Defendants have realized earnings, commissions, and/or profits from using, soliciting and disclosing the Confidential and Proprietary Information and Trade Secrets.

## CAUSES OF ACTION

### COUNT ONE
**(Trade Secret Misappropriation Under 18 U.S.C. §§ 1836 *et seq.* against all Defendants)**

44.     Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

45.     Chefs' Warehouse developed, is the owner of, and was, at all relevant times, in possession of the Trade Secrets.  The Trade Secrets include, among other things: (a) customer lists; (b) customer history and purchase reports, including detailed purchase history, pricing (including margins and gross profit), and purchasing trends; (c) points of contact for key individuals responsible for customer orders; (d) product service and operations strategies; (e) sales pitch information; (f) accounts receivable information for customers; (g) customized

pricing used by Chefs' Warehouse on a customer-by-customer and item-by-item basis;   (h) supplier databases with information concerning Chefs' Warehouse's specific suppliers; (i) technologies and business methodologies for delivering products that meet customers' individual needs and preferences; (j) sales and marketing strategies and techniques; (k) detailed service models; and (l) delivery times and order cut schedules.

46.    Chefs' Warehouse's use of the Trade Secrets relate to products used in, or intended for use in, interstate or foreign commerce.

47.    Chefs' Warehouse's Trade Secrets are proprietary to Chefs Warehouse, are not generally known to another person who can obtain economic value from their disclosure or use, and Chefs' Warehouse derives independent economic value from the fact that they are not so known because they enable Chefs' Warehouse to maintain a leadership position in its industry.

48.    Chefs' Warehouse has made and continues to make efforts that are reasonable under the circumstances to secure the secrecy of its Trade Secrets by, among other things, having a practice of restricting access to them to only those persons who need it and requiring persons who access them, such as Dotten, to execute non-disclosure agreements such as the Agreement at issue herein.

49.    Upon information and belief, Defendants have misappropriated, and continue to misappropriate, the Trade Secrets by disclosing and using them to solicit Chefs' Warehouse's customers throughout the United States, including in New York and this District, while knowing or having reason to know that the Trade Secrets were acquired through improper means, under circumstances giving rise to a duty to maintain their secrecy or limit their use, and/or from persons, such as Dotten, who owed a duty to Chefs' Warehouse (both contractually and under common law) to maintain their secrecy and limit their use.

50.    Upon information and belief, Baldor misappropriated and acquired Chefs' Warehouse's Trade Secrets through improper means, including: (a) inducing Dotten to obtain and disclose the Trade Secrets in violation of his non-competition, non-solicitation and non-disclosure provisions in the Agreement; (b) receiving and using the Trade Secrets for Defendants' benefit, while knowing, or having reason to know, that they had been acquired by unlawful or improper means; and (c) receiving and using the Trade Secrets for Defendants' benefit while knowing, or having reason to know, that they were acquired under circumstances giving rise to a duty to maintain the secrecy of the Trade Secret or limit the use of the Trade Secrets.

51.    Upon information and belief, Defendants intentionally misappropriated the Trade Secrets and used, and continues to use, them to solicit Chefs' Warehouse's customers away from Chefs' Warehouse and to Baldor.

52.    Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Trade Secrets and other recognized injuries.

53.    Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

54.    Accordingly, Chefs' Warehouse is entitled to injunctive relief enjoining and restraining Defendants, and all those acting in concert or cooperation with them, from: (i) employing Dotten at Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary

Information and Trade Secrets to any third-party, including Baldor; and (iv) as to Dotten only, directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse before October 6, 2019.  Chefs' Warehouse is also entitled to an Order directing Defendants to return all copies of any documents within their possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

55.     Chefs' Warehouse is also entitled to compensatory and statutory damages from Defendants in an amount to be determined at trial, punitive damages for Defendants' intentional and malicious misconduct in an amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees and costs.

56.     Defendants' misappropriation of Chefs' Warehouse's Trade Secrets was willful and malicious.  As such, Chefs' Warehouse is entitled under 18 U.S.C. § 1836 to an award of exemplary damages equal to twice its actual damages caused by the misappropriation, as well as all reasonable attorneys' fees and costs.

**COUNT TWO**
**(Breach of Contract Against Dotten)**

57.     Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

58.     As a precondition to granting Dotten unrestricted access to Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets, and for other valuable and ongoing consideration, Dotten signed the Agreement.

59.     Pursuant to the Agreement, Dotten agreed not to: (1) work for Baldor (or any other competitor) for six (6) months after the termination of his employment with Chefs' Warehouse; (2) directly or indirectly solicit or encourage Chefs' Warehouse customers to cease

or reduce their business with Chefs' Warehouse for two years after the termination of his employment with Chefs' Warehouse; (3) solicit Chefs' Warehouse's customers on behalf of a competitor for two years after termination of his employment with Chefs' Warehouse; and (4) disclose the Confidential and Proprietary Information and Trade Secrets to any third-party.

60.     The Agreement is narrowly tailored to protect Chefs' Warehouse's legitimate businesses interests in protecting its significant investments.  In fact, in the Agreement, Dotten acknowledged and agreed that the aforementioned covenants "are reasonable as to scope, location, and duration" and that his compliance with the covenants will not cause him "undue hardship or unreasonably interfere" with his "ability to earn a livelihood and practice" his "present skills and trade."  Exhibit 1, § 5.

61.     Upon information and belief, since resigning from Chefs' Warehouse, Dotten has violated and is actively violating the Agreement by, among other things: (1) directly or indirectly being employed by Baldor; (2) directly or indirectly soliciting Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (3) directly or indirectly soliciting Chefs' Warehouse's customers on behalf of Baldor; and (4) using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to Baldor.

62.     Chefs' Warehouse has timely performed all of its obligations under the Agreement.

63.     As a result of Dotten's breaches of the Agreement, Chefs' Warehouse has suffered irreparable damages, including harm to its reputation, goodwill and the loss of significant business opportunities.

64.     Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to

cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Confidential and Proprietary Information and Trade Secrets and other recognized injuries.

65.     Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

66.     Accordingly, Chefs' Warehouse is entitled to injunctive relief enjoining and restraining Dotten, and all those acting in concert or cooperation with him, from (i) being employed by Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse, including Baldor, before October 6, 2019; and (iv) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor.  Chefs' Warehouse is also entitled to an Order directing Dotten to return all copies of any documents within his possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

67.     Moreover, Chefs' Warehouse is entitled to damages in an amount to be determined at trial, punitive damages for Dotten's intentional and malicious misconduct in an amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees and costs.

**COUNT THREE**
**(Misappropriation of Confidential and Proprietary Information and Trade Secrets Against all Defendants)**

68.     Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     Chefs' Warehouse spent years, and millions of dollars, creating and maintaining the Confidential and Proprietary Information and Trade Secrets.   This information was developed through years of painstaking cultivation of customer relationships that give Chefs' Warehouse a competitive edge against competitors.

70.     Chefs' Warehouse took significant precautionary measures to secure and preserve the Confidential and Proprietary Information and Trade Secrets, by, among other things, having a practice of restricting access to them to only those persons who need it and requiring persons who access them, such as Dotten, to execute non-disclosure agreements such as the Agreement at issue herein.

71.     By virtue of his position within Chefs' Warehouse, Dotten had access to the Confidential and Proprietary Information and Trade Secrets.

72.     During and after his employment with Chefs' Warehouse, Dotten, both individually and on behalf of Baldor, acted in bad faith and misappropriated a commercial advantage belonging to Chefs' Warehouse by exploiting the Confidential and Proprietary Information and Trade Secrets.

73.     Baldor and Dotten intentionally misappropriated the Confidential and Proprietary Information and Trade Secrets and used them to solicit Chefs' Warehouse's customers away from Chefs' Warehouse and to Baldor.

74.     Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Confidential and Proprietary Information and Trade Secrets and other recognized injuries.

75.     Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

76.     Based upon the foregoing, Chefs' Warehouse is entitled to injunctive relief enjoining and restraining Defendants, and all those acting in concert or cooperation with them, from: (i) employing Dotten at Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor; and (iv) as to Dotten only, directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse before October 6, 2019.  Chefs' Warehouse is also entitled to an Order directing Defendants to return all copies of any documents within their possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

77.     Chefs' Warehouse is also entitled to a judgment in its favor against Defendants, jointly and severally, for all damages in an amount to be determined at trial, punitive damages for Defendants' intentional and malicious misconduct in an amount to be determined at trial, pre-judgment and post-judgment interest, attorneys' fees and costs.

### COUNT FOUR
### (Tortious Interference with the Agreement Against Baldor)

78.     Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

79.     Pursuant to the Agreement, Dotten agreed not to: (1) work for Baldor for six (6) months after the termination of his employment with Chefs' Warehouse; (2) directly or indirectly solicit or encourage Chefs' Warehouse customers to cease or reduce their business with Chefs'

Warehouse for two years after the termination of his employment with Chefs' Warehouse; and (3) solicit Chefs' Warehouse's customers on behalf of a competitor for two years after termination of his employment with Chefs' Warehouse; and (4) disclose the Confidential and Proprietary Information and Trade Secrets to any third-party.

80.     Upon information and belief, Baldor knew of the Agreement when it hired Dotten.  Section 10 of the Agreement obligated Dotten to disclose the Agreement to Baldor.

81.     Moreover, Chefs' Warehouse subsequently made Baldor aware of the terms of the Agreement, yet Baldor refused to terminate its relationship with Dotten.

82.     Baldor, with knowledge of the Agreement, intentionally and improperly used improper means to prevent Chefs' Warehouse and Dotten from rendering full performance of the Agreement by aiding and encouraging Dotten to violate the restrictive covenants contained in the Agreement.

83.     This wrongful conduct was undertaken with the sole intent of interfering with the Agreement or rendering performance under the Agreements impossible.

84.     Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Confidential and Proprietary Information and Trade Secrets and other recognized injuries.

85.     Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

86.     Based upon the foregoing wrongful, willful, malicious and intentional acts, Chefs' Warehouse is entitled to injunctive relief enjoining and restraining Baldor, and all those acting in concert or cooperation with them, from: (i) employing Dotten at Baldor before April 6, 2018; (ii)

directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; and (iii) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor.  Chefs' Warehouse is also entitled to an Order directing Baldor to return all copies of any documents within its possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

87.     Chefs' Warehouse is also entitled to a judgment in its favor against Baldor for all damages in an amount to be determined at trial, punitive damages for Baldor's intentional and malicious misconduct in an amount to be determined at trial, pre-judgment and post-judgment interest, attorneys' fees and costs.

**COUNT FIVE**
**(Tortious Interference with Other Existing Contracts Against all Defendants)**

88.     Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

89.     Chefs' Warehouse had numerous valid contracts with customers under contract for food distribution services in the New York area.

90.     Defendants knew of Chefs' Warehouse's contracts with its customers.

91.     Defendants, with knowledge of these valid agreements, intentionally and improperly used improper means to prevent full performance of the contracts.

92.     This wrongful conduct was undertaken with the sole intent of interfering with these contracts or rendering performance under the contracts impossible.

93.     Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to

cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Confidential and Proprietary Information and Trade Secrets and other recognized injuries.

94.     Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

95.     Based upon the foregoing wrongful, willful, malicious and intentional acts, Chefs' Warehouse is entitled to injunctive relief enjoining and restraining Defendants, and all those acting in concert or cooperation with them, from: (i) employing Dotten at Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor; and (iv) as to Dotten only, directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse before October 6, 2019. Chefs' Warehouse is also entitled to an Order directing Defendants to return all copies of any documents within their possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

96.      Chefs' Warehouse is also entitled to a judgment in its favor against Defendants for all damages in an amount to be determined at trial, punitive damages for Defendants' intentional and malicious misconduct in an amount to be determined at trial, pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT SIX
### (Tortious Interference with Prospective Business Relationships against all Defendants)

97.     Chefs' Warehouse restates and re-alleges the foregoing paragraphs of the Complaint as if fully set forth herein.

98.     Chefs' Warehouse spent years, and millions of dollars, creating and maintaining the Confidential and Proprietary Information and Trade Secrets.   This information was developed through years of painstaking cultivation of customer relationships that give Chefs' Warehouse a competitive edge.

99.     Upon information and belief, despite knowing that Chefs' Warehouse would lose the ability to secure future contracts with prospective clients, Dotten, both individually and on behalf of Baldor, willfully and malicious used wrongful means, including using the Confidential and Proprietary Information and Trade Secrets, to interfere with Chefs' Warehouse's prospective business relationships.

100.    Upon information and belief, as a direct result of Chefs' Warehouse's misconduct, several companies have refused — or will refuse — to consider Chefs' Warehouse for their food distribution needs.

101.    Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Confidential and Proprietary Information and Trade Secrets and other recognized injuries.

102.    Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

103.    Based upon the foregoing wrongful, willful, malicious and intentional acts, Chefs' Warehouse is entitled to injunctive relief enjoining and restraining Defendants, and all those acting in concert or cooperation with them, from: (i) employing Dotten at Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly using and/or disclosing Chefs'

Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor; and (iv) as to Dotten only, directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse before October 6, 2019.

Chefs' Warehouse is also entitled to an Order directing Defendants to return all copies of any documents within their possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

104.    Chefs' Warehouse is also entitled to a judgment in its favor against Defendants, jointly and severally, for all damages in an amount to be determined at trial, punitive damages in an amount to be determined at trial, pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT SEVEN
### (Declaratory Judgment against Dotten)

105.    Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

106.    As a precondition to granting Dotten access to the Confidential and Proprietary Information and Trade Secrets, and for other valuable and ongoing consideration, Dotten signed the Agreement.

107.    Pursuant to the Agreement, Dotten agreed not to: (1) work for Baldor for six (6) months after the termination of his employment with Chefs' Warehouse; (2) directly or indirectly solicit or encourage Chefs' Warehouse customers to cease or reduce their business with Chefs' Warehouse for two years after the termination of his employment with Chefs' Warehouse; and (3) directly or indirectly solicit Chefs' Warehouse's customers on behalf of a competitor for two

years after termination of his employment with Chefs' Warehouse; and (4) disclose the Confidential and Proprietary Information and Trade Secrets to any third-party.

108.    The Agreement is narrowly tailored to protect Chefs' Warehouse's legitimate businesses interests in protecting its significant investments.  In fact, in the Agreement, Dotten acknowledged and agreed that the aforementioned covenants "are reasonable as to scope, location, and duration" and that his compliance with the covenants will not cause him "undue hardship or unreasonably interfere" with his "ability to earn a livelihood and practice" his "present skills and trade."  Exhibit 1, § 5.

109.    Upon information and belief, since resigning from Chefs' Warehouse, Dotten has violated, are actively violating or, upon information and belief, plan to violate the Agreement by: (1) being employed by Baldor; (2) directly or indirectly solicit or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (3) directly or indirectly solicit any customer on behalf of Baldor; and (4) directly or indirectly disclosing the Confidential and Proprietary Information and Trade Secrets to Baldor.

110.    There exists a justiciable controversy between the parties which is not amenable to conventional remedies, and to which Chefs' Warehouse has no adequate remedy, or other form of action.

111.    By reason of the foregoing, Chefs' Warehouse hereby requests this Court render a declaratory judgment setting forth the rights and obligations of the parties herein, including, that: (a) the Agreement is in full force and effect (or, in the alternative, as blue penciled by the Court) and (b) Dotten breached the Agreement by: (i) being employed by Baldor; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly soliciting Chefs' Warehouse's customers on behalf

of a food products business that competes with Chefs' Warehouse; and (iv) disclosing the Confidential and Proprietary Information and Trade Secrets.

**COUNT EIGHT**
**(Permanent Injunction against Defendants)**

112.    Chefs' Warehouse restates and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

113.    Upon information and belief, since resigning from Chefs' Warehouse, Dotten has violated, is actively violating or planning to violate the Agreement by: (1) being employed by Chefs' Warehouse's competitors, including Baldor; (2) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (3) directly or indirectly soliciting customers on behalf of a food products business that competes with Chefs' Warehouse; and (4) disclosing the Confidential and Proprietary Information and Trade Secrets to Baldor.

114.    Upon information and belief, Baldor hired Dotten despite being appraised of the Agreement, including the non-compete, non-solicitation and non-disclosure provisions contained therein.

115.    Upon information and belief, Defendants have engaged in an organized and systematic effort to solicit Chefs' Warehouse's customers and to actively exploit customer relationships Dotten developed while working at Chefs' Warehouse.

116.    Upon information and belief, Defendants, directly or indirectly, have solicited Chefs' Warehouse's customers, including by initiating, attending and participating in meetings with Chefs' Warehouse's customers during which Defendants promoted and pitched Baldor's products and services, and asked Chefs' Warehouse's clients to direct their business to Baldor.

117.   Upon information and belief, Dotten disclosed and Defendants have used the Confidential and Proprietary Information and Trade Secrets in order to compete in the marketplace.

118.   Unless injunctive relief is entered, Chefs' Warehouse will continue to suffer irreparable harm in the form of lost business relationships, which took time and money to cultivate, the loss of goodwill and business reputation, the misappropriation and use of the Confidential and Proprietary Information and Trade Secrets and other recognized injuries.

119.   Chefs' Warehouse has no adequate remedy at law for its present and threatened injuries.

120.   Accordingly, Chefs' Warehouse is entitled to permanent injunctive relief enjoining and restraining Defendants, and all those acting in concert or cooperation with them, from: (i) employing Dotten at Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor; and (iv) as to Dotten only, directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse before October 6, 2019.  Chefs' Warehouse is also entitled to an Order directing Defendants to return all copies of any documents within their possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

121.   No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, Chefs' Warehouse demands the following relief from Defendants:

A. On Counts One through Six, damages in an amount to be determined at trial, statutory damages and punitive damages for Defendants' intentional and malicious misconduct in an amount to be determined at trial; pre-judgment and post-judgment interest, and attorneys' fees and costs.

B. On Count One, exemplary damages under 18 U.S.C. § 1836 equal to twice its actual damages caused by the misappropriation, as well as all reasonable attorneys' fees and costs.

C. On Counts One, Two, Three, Four, Five, Six and Eight, an Order directing Defendants to return all copies of any documents within their possession, custody or control which contain Chefs' Warehouse's Confidential and Proprietary Information or Trade Secrets.

D. On Count Seven, a declaratory judgment setting forth the rights and obligations of the parties herein, including, that:  (a) the Agreement in full force and effect (or, in the alternative, as blue penciled by the Court) and (b) Dotten breached the Agreement by: (i) being employed by Baldor within six (6) months of his termination from Chefs' Warehouse; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse; and (iv) disclosing the Confidential and Proprietary Information and Trade Secrets.

E. On Counts One, Two, Three, Four, Five, Six and Eight, preliminary and permanent injunctive relief enjoining restraining Defendants, and all of those acting in concert or cooperation with them from directly or indirectly: (i) employing Dotten at Baldor before April 6, 2018; (ii) directly or indirectly soliciting or encouraging Chefs' Warehouse's customers to cease doing business with Chefs' Warehouse; (iii) directly or indirectly using and/or disclosing Chefs' Warehouse's Confidential and Proprietary Information and Trade Secrets to any third-party, including Baldor; and (iv) as to Dotten only, directly or indirectly soliciting Chefs' Warehouse's customers on behalf of a food products business that competes with Chefs' Warehouse before October 6, 2019.

F. On all Causes of Action, such other relief as is deemed just and proper by the Court.

Dated: December 1, 2017
  New York, New York

             **REED SMITH LLP**

      By: /s/ Casey D. Laffey
        Casey D. Laffey
        Ian M. Turetsky
        599 Lexington Avenue
        New York, New York 10022
        Tel. (212) 521-5400
        Fax. (212) 521-5450

        *Attorneys for Plaintiffs The Chefs'*
        *Warehouse, Inc. and Dairyland USA,*
        *Corp.,*